## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **AISHEF SHAFFER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16–cv–0784–MJR** |
| | ) | |
| **JACQUELINE LASHBROOK,** | ) | |
| **KBAT,** | ) | |
| **A.  CACIOPPO,** | ) | |
| **BAKER,** | ) | |
| **FURLOW,** | ) | |
| **MCDONALD,** | ) | |
| **BELFORD,** | ) | |
| **C. WHEELAN,** | ) | |
| **SELBY,** | ) | |
| **D. FLATT,** | ) | |
| **JOHN DOE,** | ) | |
| **WEXFORD HEALTH SOURCES,** | ) | |
| **CHRISTINE BROWN,** | ) | |
| **JANE DOE 1,** | ) | |
| **JANE DOE 2,** | ) | |
| **JANE DOE 3,** | ) | |
| **BRUCE RAUNER,** | ) | |
| **JOHN BALDWIN, and** | ) | |
| **LOUIS SHICKER** | ) | |
| | ) | |
| **Defendants.** | | |

### MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Aishef Shaffer, an inmate in Pickneyville Correctional Center, brings this

action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.  He

seeks declarative, nominal, compensatory, and punitive damages, as well as injunctive

relief. (Doc. 1, p. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

### The Complaint

Page **2** of **18**

On November 5, 2015, Kbat was working as a transport officer, responsible for moving inmates to and from the chow hall.  (Doc. 1, p. 9).  At approximately 9:30 am that day, a fight broke out between two inmates as housing unit R3- A wing was leaving the housing unit for chow.  (Doc. 1, p. 9).  McDonald, who was also working transport, called a 10-10, and told all inmates to sit on the ground.  (Doc. 1, p. 9). Plaintiff fully complied with that order.  (Doc. 1, p. 10).  McDonald and Cacioppo broke up the fight, and the inmates involved were cuffed and taken to segregation.  (Doc. 1, p. 10).  Belford then arrived on the scene.  (Doc. 1, p. 10).

Suddenly, without warning, Kbat ran up behind Plaintiff and kicked him repeatedly while waiving a can of mace in his face and threatening Plaintiff.  (Doc. 1, p. 10).  Kbat said "you mutha fucka [sic] don't want to fuck with me today.  I'll knock you the fuck out."  Cacioppo, Belford, McDonald, and Baker were all present at that time. (Doc. 1, p. 10).  Plaintiff alleges that he was not causing a disturbance and was following all IDOC rules and policies.  (Doc. 1, p. 10).  He further alleges that as a result of the assault, he experienced severe pain in his back.  (Doc. 1, p. 10).

Plaintiff requested medical attention from Cacioppo, McDonald, and Baker, but they refused to take him to the health care unit.  Cacioppo stated "If you can breath [sic] your [sic] alright," and then laughed and walked away.  (Doc. 1, p. 11).  Several other inmates told Baker and Cacioppo that Kbat kicked Plaintiff, but the guards ignored them.  (Doc. 1, p. 11).  Plaintiff had difficulty walking to chow due to the pain in his back; he told Belford, but Belford ignored Plaintiff's request for medical attention.  (Doc.

1, p. 12).   Once back at his housing unit, Plaintiff repeated his request for medical attention to Baker and Cacioppo again, but Baker told him, "your [sic] be fine write a grievance."  (Doc. 1, p. 12).  Plaintiff continued to be ignored by Cacioppo.  (Doc. 1, p. 13).

In the afternoon on the same day, Plaintiff reported to internal affairs to speak to Lt. Furlow.  (Doc. 1, p. 13).  Plaintiff reported Kbat's assault.  (Doc. 1, p. 14).  Furlow reviewed the video recordings and confirmed the events, but downplayed the assault, saying "It ain't like you were stump out, that's nothing."  (Doc. 1, p. 14).

Plaintiff convinced Furlow to take him to health care unit for his injuries at approximately 3:00 pm.  (Doc. 1, p. 15).  The Jane Doe nurse in the health care unit allegedly refused to evaluate Plaintiff and did not give him any medication.  (Doc. 1, p. 15).  Medical records submitted by Plaintiff show that a nurse filled out an injury report for Plaintiff on November 5, 2015, and the report was noted in his medical records. (Doc. 1-1, p. 2-3).  The nurse further noted no redness, bruising, or swelling, normal vitals, and that Plaintiff was able bend over without difficulty.  (Doc. 1-1, p. 3).  Plaintiff was directed to follow-up with nurse sick call.  (Doc. 1-1, p. 3).

Plaintiff reported to nurse sick call the next day on November 6, 2015 at 11:00 am.  (Doc. 1, p. 15).  Plaintiff was told that he could not see a doctor until he submitted two more nurse sick call slips.  (Doc. 1, p. 15-16).  Plaintiff's medical records show that he was referred to the MD on November 6, 2015 at the 11 am visit without having to submit further sick call slips.  (Doc. 1-1, p. 5).  The medical record also shows that

Plaintiff previously had a history of back pain caused by a gunshot wound and an injury he sustained while working out.  (Doc. 1-1, p. 5).  The records further note that due to his chronic back pain, Plaintiff had received 60, 600 mg prescription ibuprofens on October 20, 2015, two weeks prior to the incident.  (Doc. 1-1, p. 5).  The nurse also instructed Plaintiff on general strengthening exercises and to avoid heavy sport activities.  (Doc. 1-1, p. 5).  Plaintiff also reported at this time that his back pain was not new, but rather ongoing.  (Doc. 1-1, p. 6).  Plaintiff alleges that he continually tried to get attention for his medical needs in the days following, and was ignored.  (Doc. 1, p. 16).

Plaintiff saw Dr. Shah on November 10, 2015 at 11:05 am.   (Doc. 1, p. 16).  Plaintiff alleges that Shah refused to perform an examination, take x-rays, or prescribe any medication for Plaintiff's back pain and lack of mobility.  (Doc. 1, p. 16).  The medical records show that Shah conducted an examination.  (Doc. 1-1, p. 7).  Plaintiff alleges that Shah told him he'd be fine if he just drank water.  (Doc. 1, p. 16).

Plaintiff alleges that Shah's denial of medical care aggravated his injuries, that he could not walk without difficulty and discomfort, and that he experienced consistent chronic pain.  (Doc. 1, p. 17).  Plaintiff continued to submit nurse sick call slips, and after he submitted three more, he was seen again by Shah on November 24, 2015.  (Doc. 1, p. 17).  Shah became angry at Plaintiff and sent him away without any treatment.  (Doc. 1, p. 18).  He also wrote Plaintiff a disciplinary ticket for insolence, allegedly to discourage and obstruct Plaintiff from receiving treatment.  (Doc. 1, p. 18).

Plaintiff began grieving his condition.  (Doc. 1, p. 18).  He alleges that some of the grievances were never responded to, and that Flatt and Wheelan ultimately told Plaintiff to stop filing grievances.  (Doc. 1, p. 18).  Plaintiff also wrote to Brown about the denial of medical care, but got no response.  (Doc. 1, p. 19).

Plaintiff continued to submit sick call requests.  (Doc. 1, p. 19).  On January 19, 2016, he was examined by Dr. Scott.  (Doc. 1, p. 19).  Scott prescribed Mobic, Diclofenac, Robacin, and physical therapy.  (Doc. 1, p. 20).  Plaintiff alleges that the Defendants then conspired to keep him from receiving the benefits of Scott's orders because Plaintiff was scheduled to see the physical therapist on February 29, 2016, but a John Doe guard falsified records to show that Plaintiff refused the visit.  (Doc. 1, p. 20).  Plaintiff continued complaining about his health on a daily basis.  (Doc. 1, p. 20).

Plaintiff further alleges that Rauner, Baldwin and Shicker, acted with deliberate indifference to systematic deficiencies in the IDOC health care system, as detailed in the expert report in *Lippert v. Godinez*, No. 10-cv-4603

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into seven counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The following claims survive threshold review:

**Count 1: Eight Amendment excessive force claim against Defendant Kbat for allegedly assaulting Plaintiff on November 5, 2015;**

Count 2: Assault and battery claim pursuant to Illinois state law against Defendant Kbat for allegedly assaulting Plaintiff on November 5, 2015;

Count 3: Eighth Amendment deliberate indifference claim against Lashbrook, Cacioppo, Baker, McDonald, Belford, and Furlow to Plaintiff's serious medical needs when they refused to get him medical attention following the assault.

Count 4: Eighth Amendment deliberate indifference claim against Jane Does 1-3, Shah, and Brown for failure to treat Plaintiff's serious medical needs after the alleged assault.

Count 5: John Doe 1 conspired to interfere with Dr. Scott's medical orders when he intentionally misreported that Plaintiff had refused his physical therapy appointment on February 29, 2016

Plaintiff has also attempted to bring other Counts, but for the reasons elucidated below, these claims do not survive threshold review.

Count 6: Wheelan, Shelby, Flatt, and Lashbrook, individually and in conspiracy, violated Plaintiff's Fourteenth Amendment due process rights when they denied his grievances for the purpose of denying him access to the courts

Count 7: Eight Amendment deliberate indifference claim against Rauner, Baldwin, Shicker, and Wexford Health Sources, Inc. for implementing certain policies.

As to Plaintiff's **Count 1**, it has long been recognized that the "core requirement" of the claim under the Eighth Amendment is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). *See also Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010). Factors that guide the Court's analysis of whether an officer's use of excessive force was legitimate or malicious are the need for an application of force, the amount of force used, the threat an officer reasonably

perceived, the effort made to temper the severity of the force used, and the extent of the injury suffered by the prisoner. *Hudson*, 503 U.S. at 7; *Hendrickson*, 589 F.3d at 890; *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004). The allegations in the Complaint suggest there was no need for the use of force during the November 5, 2015 incident. Plaintiff alleges that he was following orders and sitting on the floor when Kbat kicked him out of the blue.  If Plaintiff's allegations are true, this is a clear-cut case of excessive force.

The same logic holds true for Plaintiff's state law claims in **Count 2.**  Under Illinois state law, "[a] battery occurs when one 'intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual.'" *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (quoting 720 ILL. COMP. STAT. 5/12–3(a)).  Plaintiff has pleaded sufficient facts to meet this standard, and **Count 2** shall be permitted to proceed.  However, the Court notes that although Plaintiff has used two distinct legal theories, they are based on the same set of facts, and Plaintiff will only be permitted one recovery under the law for the same harm.

Turning now to **Count 3**, in order to state a deliberate indifference claim, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in

disregard of that risk.  Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle,* 680 F.3d 859, 865 (7th Cir.2012) (internal citations and quotations omitted). *See also Farmer v. Brennan,* 511 U.S. 825, 842 (1994); *Perez v. Fenoglio,* 792 F.3d 768, 777–78 (7th Cir.2015).

Plaintiff alleges that he told Cacioppo, Baker, McDonald, and Belford, that he needed medical attention after the assault and they all declined to take him to health care.  That is sufficient to state a claim against those defendants.  However, Plaintiff attempts to bring a similar claim against Furlow.  Plaintiff's Complaint states that when he told Furlow about the assault, Furlow made a report and took Plaintiff to heath care.  Furlow was the one guard who did as Plaintiff requested.  Having alleged that Furlow took him to the health care unit, Plaintiff states no claim against him for deliberate indifference to serious medical needs.  Therefore, Furlow will be dismissed without prejudice from this case.

Plaintiff also alleges that Lashbrook knew of his condition and refused to intervene.  Although Plaintiff does not allege that he spoke to her in person, he does attach some grievances he filed as emergencies.  Lashbrook determined that the grievances were not emergencies.  Although this claim is thin, the grievances are sufficient to make Plaintiff's allegation that Laskbrook may have known of his serious medical need and refused to intervene plausible.  Therefore, **Count 3** will proceed against Lashbrook at this time.

Plaintiff's claim against Shah in **Count 4** is that he refused to evaluate, order x-rays, or prescribe any medication for Plaintiff's chronic back pain.  Shah allegedly ignored Plaintiff's complaints of pain, and told him to drink water.  The Complaint further alleges that when Plaintiff returned to Shah, Shah explicitly told him he was not interested in his complaints or treating him.  Plaintiff also alleges that Shah wrote him up for insolence in lieu of treating him.  Plaintiff submitted Shah's notes for that day as an exhibit, but they are nearly impossible to read.  Plaintiff's allegations that Shah did nothing but tell Plaintiff to drink water when confronted with Plaintiff's complaints are sufficient to state a claim for deliberate indifference, **Count 4** shall proceed against Shah.

Evaluating Plaintiff's remaining claims in **Count 4** is made more difficult by the rampant contradictions between Plaintiff's statement of events and the medical documents he submitted as exhibits to the Complaint.  However, "[t]o the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013).  It is possible for a plaintiff to plead himself out of court by including exhibits to the complaint that show he is not entitled to the relief he seeks. *Centers v. Centennial Mortg. Inc.*, 398 F.3d 930, 933 (7th Cir. 2005).  The Court will therefore credit the medical records, rather than Plaintiff's statements in the Complaint, to the extent they conflict.

As to Jane Doe 1, Plaintiff alleges that she refused to conduct an examination or give him medication.   But that account is contradicted by the records Plaintiff submitted.  Those records show that the nurse documented Plaintiff's injury, as well as his account of how it happened.  The records also show that Plaintiff was already taking prescription pain medication at that time.  As the nurse is not authorized to prescribe medication, it is likely that she could not have given Plaintiff anything stronger than the prescription he already had.  Plaintiff's exhibits show that Plaintiff is not entitled to any relief against Jane Doe 1, because contrary to his claims, she did examine him and she was not in a position to change his prescription medication.   Jane Doe 1 will be dismissed without prejudice.

Plaintiff also tries to bring claims against Jane Doe 2 and Jane Doe 3, who the Complaint identifies as nurses working on November 18 and November 13, respectively.  Plaintiff's Complaint alleges that he was seen by a nurse on sick call on those days after Shah provided Plaintiff with inadequate treatment on November 10th. The medical record from November 13 indicate that Jane Doe 3 conducted a full examination for back pain, took Plaintiff's vitals, recorded his statement that his condition worsened when he was kicked in the back a week prior, and provided him with ibuprofen because Plaintiff indicated that his prescription ibuprofen had run out. Plaintiff's Complaint vaguely states that Jane Doe 3 failed to diagnose or treat his condition, but his exhibit establishes that she evaluated him for back pain and gave him ibuprofen.  Therefore, Plaintiff's claims against Jane Doe 3 must be dismissed without

prejudice at this time, because Plaintiff's exhibit establishes that she took the steps that Plaintiff alleges she failed to take.

The same pattern repeats itself with respect to Jane Doe 2. Plaintiff's Complaint vaguely states that she failed to diagnose or treat his condition, without providing further details. Yet Plaintiff's exhibits show that Jane Doe 2 comprehensively evaluated Plaintiff's back pain on November 18, 2015 and that she gave him acetaminophen when he reported that the ibuprofen was not working. Jane Doe 2 both evaluated and treated Plaintiff's back pain according to Plaintiff's exhibits, which supersede the Complaint. Plaintiff's claims against Jane Doe 2 will likewise be dismissed without prejudice.

Plaintiff's only allegation against Brown is that he told her about the denial of medical treatment by Shah and received no response from her department. The exhibits contain one grievance to which C. Brown responded. In some cases, a grievance can suggest that a defendant had the requisite knowledge of a serious medical condition, *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015), Plaintiff's allegations are sufficient in light of *Perez* for a deliberate indifference claim against Brown to proceed.

As to **Count 5**, Plaintiff's claim that an unknown John Doe Defendant was deliberately indifferent to his serious medical needs when he falsified a medical services refusal form that kept Plaintiff from a physical therapy appointment shall proceed. However, despite using the term "conspiracy" Plaintiff has neither identified nor described any other defendants in connection the false refusal. He makes a vague and

conclusory statement that other defendants have obstructed and inferred with Scott's orders.   A conspiracy requires more than one person, as there must be agreement to commit the unlawful act.  *Cooney v. Casady*, **735 F.3d 514, 518 (7th Cir. 2013) (citing** *Lewis v. Mills*, **677 F.3d 324, 333 (7th Cir. 2012))**.  Plaintiff's allegations do not rise to that level.  Because Plaintiff has not identified or described any other member of the conspiracy, or described any other conduct in furtherance of the conspiracy, Plaintiff has failed to meet the pleading standards in *Iqbal* and *Twombly*.  His allegations are simply too vague. To the extent that Count 5 attempts to bring a conspiracy claim, it will be dismissed.  Count 5 proceeds as an individual claim against John Doe 1.

Count 6 must be dismissed in its entirety.  Plaintiff's Complaint is very clear that he is attempting to state a due process claim, not implicate the grievance defendants in his other medical deliberate indifference claims.  But Plaintiff has no due process claim based on the grievance procedures.   Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se.  As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim."  *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).  *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).  Therefore **Count 5** will be dismissed with prejudice.

Finally, **Count 7** must also be dismissed without prejudice.  Plaintiff alleges that the state defendants (Rauner, Baldwin, and Shicker) and Wexford Health Sources were

deliberately indifferent towards health care vacancies throughout the IDOC.  He bases this allegation on conclusions reached by experts in the Northern District case, *Lippert v. Godinez*, 10-cv-4603.  Plaintiff has not alleged that he was harmed by any of the specific deficiencies identified in the report.  Moreover, the Court has reviewed the report, and Plaintiff's case is not specifically mentioned therein.

The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 219, 220 n. 3 (7th Cir. 1990) (same).  A prisoner may bring a claim against an officer in his official capacity if the constitutional deprivations were the result of an official policy, custom, or practice. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006).  That is, the unconstitutional policy must have caused the deprivation. *See Roe v. Elyea*, 631 F.3d 843, 863–64 (7th Cir. 2011).

Plaintiff has alleged that the care provided to him by the various defendants was deliberately indifferent to his chronic back pain, and that the guards did not bother to provide him with any health care when they knew that he needed it.  This is too tenuous a connection to the allegations against the state defendants and Wexford.  Even

taking Plaintiff's allegations as true—that the *Lippert* report identifies staffing deficiencies throughout the IDOC prison system—there is no causal connection between that conclusion and the events of which Plaintiff complains.  Plaintiff has not alleged that he did not get care because positions were not staffed.  He has alleged that the individual defendants were deliberately indifferent.  Plaintiff's claim against the state defendants fails and will be dismissed without prejudice because he has not made a plausible allegation that the policy he identified caused his harm.

## Pending Motions

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3), a Motion for Service at Government Expense, (Doc. 4), and a Motion to Appoint a Special Master. (Doc. 8).  The Motion for Recruitment of Counsel and the Motion to Appoint a Special Master will be referred to the Magistrate Judge assigned to this case.  The Motion for Service of Process is unnecessary for a party who has been granted leave to proceed IFP, and Plaintiff's motion requesting it is therefore **MOOT**.  (Doc. 4).

## Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1-5** survive threshold review against Defendants Kbat, Lashbrook, Cacioppo, Baker, McDonald, Belford, John Doe, and Brown.  However, Defendants Furlow and Jane Does 1-3 will be **dismissed without prejudice** because Plaintiff has failed to state a claim against those Defendants.

**IT IS HEREBY ORDERED** that **COUNTS 6** and **7** fail to state a claim upon which relief may be granted.  **COUNT 6** is dismissed **with prejudice** and **COUNT 7** is

**DISMISSED without prejudice**.   Defendants Wheelan, Selby, and Flatt are **DISMISSED with prejudice** and Defendants Wexford Health Sources, Rauner, Baldwin and Shicker are **DISMISSED** from this action **without prejudice**.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Kbat, Lashbrook, Cacioppo, Baker, McDonald, Belford, John Doe, and Brown:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown John Doe Defendant until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed

above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or  counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  September 22, 2016**

**s/ MICHAEL J. REAGAN**
**U.S. Chief District Judge**
